BARNS, PAUL D., Associate Judge.
The suit was brought by M. & M. Electric Co., Inc., against Diana Stores Corporation, holder of a long-term lease upon the property against which the lien was placed, and R. M. Thompson Company, the general contractor which had built a retail store building upon the property. At final hearing on complaint, answer, counterclaim, reply to counterclaim and testimony, the chancellor entered a final decree for the plaintiff and against the two defendant-appellants and dismissed the counterclaim, from which final decree this appeal was prosecuted. We find error and reverse.
The defendants’ answer denied that the plaintiff had performed any work for which it was not paid, alleged that plaintiff had been paid in full for labor and materials actually furnished, and incorporated a counterclaim by R. M. Thompáon Company. The counterclaim, also based upon the plaintiff’s contract, alleged that the plaintiff’s failure to abide by the contract scheduling requirements, refusal to perform a portion of its contract work, and poor workmanship, had put the plaintiff in breach of contract, and had forced the general contractor to employ another electrical subcontractor at premium rates in order to complete the building on schedule, resulting in damages to R. M. Thompson Company to the extent of its payments in excess of the price for which the plaintiff had contracted to complete the work.
The case was tried before the chancellor, who entered a final decree with attached memorandum opinion, giving the plaintiff judgment against both defendants for $3,729, and dismissing the counterclaim of R. M. Thompson Company.
On May 21, 1956, the parties entered into a written contract, which con *488 sisted of a purchase order, three pages of General Conditions, an addendum page to the general specifications, three pages of Electrical Specifications, and two sheets of plans. All of these comprise Plaintiff’s Exhibit 1. For the purpose of this controversy, the following provisions of these contract documents are important:
(1) The purchase order binds the Plaintiff-subcontractor to:
“Furnish necessary materials, labor and equipment to completely install electrical facilities for Diana Stores, Coral Gables, Florida, in strict accordance with general conditions, consisting of three pages Electrical Specifications, Section XXIII, consisting of three pages, addendum No. 1 consisting of one page, attached hereto, all as prepared by Southeastern Engineering Company, Clearwater, Florida, and plans number 2 and 3 not dated, all as prepared by Diana Stores, New York for the total price of $5,890.00.”
(2) The purchase order also states:
“Scheduling and completion of all electrical and related work shall be in accordance with job requirements set forth by the job superintendent.”
(3) Paragraph XVII of the Electrical Specifications, which originally contained a reference over to air conditioning specifications, was deleted by the addendum page, which provided:
“Section XXIII — Electrical work Paragraph XVII — Omit entire paragraph. Refer to plans for extent of air conditioning electrical work.”
(4) On the face of the plans, in plain view, appears the following legend:
“All Power, Interlocks, & Temperature Control Wiring For The A/C System Consisting Of:
Unit (3 - 7i/2 H. P.) (1-5 H. P.)
(1 - 71/2 H. P.) Fan
(1 - 5 H. P.) Motor Cooling Tower
Shall Be A Part Of The Electrical Contract.”
The principal controversy is whether the plaintiff-appellee, M. & M. Electrical Co. (hereinafter referred to as “M. & M.”), as sub-contractor, was obligated to R. M. Thompson & Co. (hereinafter referred to as “Thompson”), the general contractor, to furnish the material and labor for the air conditioning system as a part of his contract for completion of the electrical work. The chancellor found that “M. & M.” was not obligated, but we find to the contrary.
It seems that the extent of the wiring for the building is governed by the plans, item (4), supra, and it is clearly stated on the plans that the “wiring for the A/C system * * * shall be a part of the electrical contract.” Item (4), supra, is referred to in the Electrical Specifications, item (3), supra, by the words “Refer to plans for extent of air conditioning electrical work”, both of which are a part of the purchase order, item (1), supra. Our conclusion, that the wiring for the air conditioning was a part of “M. & M.’s” contract, seems clear from the document itself, and such conclusion is supported by the testimony of an electrical contractor who is a master electrician, and the Electrical Inspector for the City of Coral Gables, where the building was constructed. Mr. Margulies of “M. & M.” contended to the contrary.
Another controversy is whether “M. & M.” was entitled to an adjustment by reason of the plans specifying that the main service wire should be 500 MCM and 250 MCM when the City of Coral Gables code required the size of the wires to be 750 MCM and 350 MCM. We find that “M. & M.” is entitled to an adjustment based on the differences between the increased cost of meeting the city's requirements and the specifications on the plans, calculated as of the date of the contract. There is evidence to support an adjustment of $400 in favor of “M. & M.” but we leave the amount for the determination of the chancellor.
*489 Another contention is that “M. & M.” did not schedule and complete the electrical work in accordance with job requirements as provided for by contract, i. e., see item (2), supra, and by reason thereof, the contractor put “M. & M.” off the job and let the contract for completion of the electrical work to another on a cost plus basis. The evidence seems to show that the electrical contract was approximately 50% completed when the other work was 95% completed and that “M. & M.” was timely cautioned of the importance of meeting the schedule, but failed to do so. We find that “Thompson”, the contractor, was fully justified in its action in this respect and that “Thompson’s” counterclaim is fully justified and supported by the evidence.
The appellant complains that the lower court erred in its final decree in ordering the defendant-appellant, Diana Stores Corporation, to pay the plaintiff-appellee the amount that it found owing the plaintiff by “Thompson”. This question will become moot upon reversal but we may add that the plaintiff only claimed a mechanic’s lien against the interest of “Diana” in the real property involved; hence “Diana” owed plaintiff nothing as plaintiff had no contract with “Diana”. Such a decree was further improper since the lien had been released on order of court by the substitution of a bond filed by “Thompson” conditioned to pay any claim found due the plaintiff from “Thompson” in this action. “Diana” might well be dropped as a party and the surety on the bond' substituted as a party defendant, after notice. Florida Rules of Civil Procedure, Rule 1.18, 30 F. S.A., provides:
“Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.”
In conclusion, we wish to express our sincere appreciation to the attorneys for the respective parties for the excellent appendices supplied on this appeal. Good appendices are of a great service in expediting appeals, particularly when we would otherwise be compelled to read so much that is immaterial, and immaterial matter often obscures the material.
The decree appealed from is reversed, and the case remanded for further proceedings not inconsistent herewith, including allowances due for other extras not specifically considered herein.
Reversed and remanded.
PIORTON, Acting Chief Judge, and PEARSON, J., concur.